46 F.2d 455 (1931)
In re DARTMONT COAL CO.
UNITED STATES
v.
BANK OF MT. HOPE.
No. 3070.
Circuit Court of Appeals, Fourth Circuit.
January 13, 1931.
Clarence E. Dawson, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (James Damron, U. S. Atty., and Okey P. Keadle, Asst. U. S. Atty., both of Huntington, W. Va., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for the United States.
Herman L. Bennett, of Charleston, W. Va. (Dillon Mahan & Holt, of Fayetteville, W. Va., Brown, Jackson & Knight, of Charleston, W. Va., C. E. Mahan, Jr., of Fayetteville, W. Va., and C. W. Moxley, of Charleston, W. Va., on the brief), for appellee.
Before NORTHCOTT, Circuit Judge, and COLEMAN and GLENN, District Judges.
*456 NORTHCOTT, Circuit Judge.
Dartmont Coal Company, a West Virginia corporation, incurred a liability to the United States of America for income taxes for the year 1920, in the amount of $11,010.01, which was duly assessed in August, 1926. On October 14, 1926, the collector of internal revenue for the district of West Virginia filed a notice of tax lien for the amount of this tax upon the property of the taxpayer in the office of the clerk of the District Court of the United States for the Southern District of West Virginia, at Charleston, in Kanawha county. On April 27, 1927, the Legislature of the state of West Virginia passed an act authorizing, among other things, the filing by the United States of notices of its tax liens in the offices of the clerks of the county courts of said state, pursuant to the provisions of section 3186 of the United States Revised Statutes, as amended.
By deed of trust, dated January 30, 1929, recorded in the office of the clerk of the county court of Boone county, W. Va., on February 11, 1929, the Dartmont Coal Company conveyed to C. E. Mahan, Jr., trustee, certain of its real estate in trust to secure notes payable to the Bank of Mt. Hope, the appellee herein.
The coal company being subsequently adjudicated a bankrupt, an order was entered on September 3, 1929, by the referee in the bankruptcy proceedings holding the lien of the Bank of Mt. Hope under its deed of trust superior and prior to the claim of the United States for the income tax. Upon a hearing before the United States District Court for review and reversal, the referee's order was affirmed. This appeal is prosecuted from that decision.
Section 3186, Revised Statutes, as amended by the Act of February 26, 1925 (43 Stat. 994 [26 USCA § 115 note]), reads as follows:
"Sec. 3186. That if any person liable to pay any tax neglects or refuses to pay the same after demand, the amount shall be a lien in favor of the United States from the time when the assessment list was received by the collector, except when otherwise provided, until paid, with the interest, penalties, and costs that may accrue in addition thereto upon all property and rights to property belonging to such person: Provided, however, That such lien shall not be valid as against any mortgagee, purchaser, or judgment creditor until notice of such lien shall be filed by the collector in the office of the clerk of the district court of the district within which the property subject to such lien is situated: Provided further, That whenever any State by appropriate legislation authorizes the filing of such notice in the office of the registrar or recorder of deeds of the counties of that State, and in the State of Louisiana in the parishes thereof, and in the States of Connecticut, Rhode Island, and Vermont in the office of the registrar or recorder of deeds or town or city clerk having custody of the land records of the towns and cities, then such lien shall not be valid in that State against any mortgagee, purchaser, or judgment creditor until such notice shall be filed in the office of the registrar or recorder of deeds of the county or counties, or parish or parishes in the State of Louisiana, or in the office of the registrar or recorder of deeds or town or city clerk having custody of the land records in the States of Connecticut, Rhode Island, and Vermont of the towns or cities within which the property subject to the lien is situated."
The Act of April 27, 1927, of the West Virginia Legislature (chapter 56, Acts of Regular Session of 1927), reads as follows:
"Be it enacted by the Legislature of West Virginia: That a uniform law relating to the filing of notices of liens for federal taxes and certificates for discharging such liens be enacted, so as to read as follows:
"Section 1. Pursuant to the authority of paragraph three thousand one hundred and eighty-six of the United States Revised Statutes, notices of federal tax liens and certificates discharging such liens may be filed in the offices of the clerk of the county court of one or more counties of the state.
"Sec. 2. As provided in said paragraph three thousand one hundred and eighty-six, no such tax shall be a valid lien as against any mortgagee, purchaser, or judgment creditor, until such notice shall be filed in the office of the clerk of the county court of the county or counties within which the property subject to the lien is situated.
"Sec. 3. Notices of federal tax liens heretofore filed with the clerk of a federal district court or certified transcripts thereof may be filed by the collector of internal revenue of the district in the office of the clerk of the county court of one or more counties in this state; Provided, that such liens heretofore filed with a clerk of a federal district court shall not continue valid liens for more than four months after the taking effect of this act, as against any mortgagee, purchaser, or judgment creditor becoming such after the expiration of such four months, unless *457 such notice or transcript shall be filed as above provided. After the filing of such notice or a certified transcript thereof with the clerk of the county court, following the expiration of such four months period, the federal tax lien shall be valid as against mortgagees, purchasers, or judgment creditors becoming such subsequent to such filing. If this section shall be held not authorized by federal law, it shall not affect the validity of the other sections of this act.
"Sec. 4. The procedure with respect to filing and indexing shall be the same as that respecting other similar liens so far as applicable.
"Sec. 5. The fee for filing each notice of lien shall be twenty-five cents and for each discharge thereof twenty-five cents."
It is well settled that no state has the power to enact legislation affecting federal tax liens, except as permitted by an act of Congress. In United States v. Snyder, 149 U. S. 210, 13 S. Ct. 846, 847, 37 L. Ed. 705, Mr. Justice Shiras said: "If the United States, proceeding in one of their own courts, in the collection of a tax admitted to be legitimate, can be thwarted by the plea of a state statute prescribing that such a tax must be assessed and recorded under state regulation, and limiting the time within which such tax shall be a lien, it would follow that the potential existence of the government of the United States is at the mercy of state legislation."
It was early definitely settled that the states are prohibited from passing any act which shall be repugnant to the laws of the United States. In McCulloch v. Maryland, 4 Wheat. 316, 436, 4 L. Ed. 579, Chief Justice Marshall forever settled this question when he said: "The Court has bestowed on this subject its most deliberate consideration. The result is a conviction that the States have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government. This is, we think, the unavoidable consequence of that supremacy which the constitution has declared."
The Legislature of the state of West Virginia clearly had no power to enact section 3 of the Act of April 27, 1927, above quoted. Indeed, the Legislature itself seems to have been aware of this fact, as is shown in the last sentence in section 3, and that the Legislature had no such right was admitted by counsel for appellee in the argument before this court. It then follows that, if any authority exists to support the contention of appellee that the government's lien to remain valid must be recorded as provided in section 3 of the Act of April 27, 1927, of the West Virginia Legislature, it must be found in the act of Congress itself.
A reading of section 3186, Revised Statutes, as amended, shows that no such authority is expressly given in the statute, nor in our opinion can any such construction be given the statute by inference. Section 3 of the Act of April 27, 1927, of the West Virginia Legislature, was never in any way accepted or concurred in by the government of the United States. On the contrary, the Commissioner of Internal Revenue by Internal Revenue Bulletin VI, No. 26, on June 27, 1927, expressly rejected this section in the following language: "The Act of April 27, 1927, passed by the legislature of West Virginia, effective from the date of its enactment, is accepted by the Bureau of Internal Revenue (except the provisions of sections 2 and 3 thereof) as the `appropriate legislation' referred to in the second proviso of section 3186, Revised Statutes, as amended by the Act of March 4, 1913 (37 Stat. 1016), and the Act of February 26, 1925 (43 Stat. 994), authorizing the filing of notices of Federal tax liens with certain designated county or other officials."
It is admitted that the lien of the government, when the notice was filed in the office of the clerk of the District Court of the United States for the Southern District of West Virginia, in 1926, was a good and valid lien, and no subsequent act of the Legislature of West Virginia could in any way impair its validity. In United States v. Curry (D. C.) 201 F. 371, 373, Judge Rose said: "In that case, as in all others which have been called to my attention or which I have myself found, it has been held that, when the requirements of the assessment and the demand have been complied with, the lien of the government is superior to that of any one acquiring any interests in the property after the date of demand. The government's lien is unaffected by the fact that a subsequent incumbrancer or purchaser became such without knowledge that the government had any interest in the property or claim upon it."
See, also, Blacklock v. United States, 208 U. S. 75, 28 S. Ct. 228, 52 L. Ed. 396; United States v. Pacific Railroad (C. C.) 1 F. 97; United States v. Turner, 28 Fed. Cas. page 232, No. 16,548.
*458 In 1913, Congress of the United States granted to the Legislatures of the various states the right to enact enabling legislation requiring government liens, in order to be valid, to be filed in the office of the registrar or the recorder of deeds of a county within which the property subject to the lien is situated. Such an act should be strictly construed in favor of the government. United States v. Dickson, 15 Pet. 141, 10 L. Ed. 689; Cornell v. Coyne, 192 U. S. 418, 24 S. Ct. 383, 386, 48 L. Ed. 504; Hannibal, etc., Railroad Co. v. Packet Co., 125 U. S. 260, 8 S. Ct. 874, 31 L. Ed. 731.
In the case of Cornell v. Coyne, supra, the Supreme Court said: "But if there be any doubt as to the proper construction of this statute (and we think there is none), then that construction must be adopted which is most advantageous to the interests of the government. The statute, being a grant of a privilege, must be construed most strongly in favor of the grantor."
The Legislature of the state of West Virginia did not see fit to avail itself of the permission given by the act of Congress to pass the enabling legislation until the year 1927. In the meantime, the government lien in this case had been recorded and become valid as against the property of the coal company. No subsequent act of the Legislature of West Virginia could, of itself, in any way affect the validity of that lien.
It follows that the action of the court below in declaring the lien of the appellee to be prior to that of the government was erroneous, and the order of the court below is reversed.