## UNITED STATES v. HUTCHERSON et al.

### No. 14257.

United States Court of Appeals
Eighth Circuit.

April 17, 1951.

Harry Marselli, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen. and Ellis N. Slack, Sp. Asst. to Atty. Gen., on the brief, Sam M. Wear, U. S. Atty., Kansas City, Mo., and William Aull, III, Asst. U. S. Atty., Lexington, Mo., of counsel), for appellant.

Marcy K. Brown, Jr., Kansas City, Mo., for appellees.

Before COLLET and STONE, Circuit Judges, and DELEHANT, District Judge.

COLLET, Circuit Judge.

This action involves the question of whether the lien of the United States for unpaid federal income taxes owed by a husband, attaches to the interest of the husband in Missouri real estate owned by the husband and wife as tenants by the entirety so that the husband may not join with the wife in conveying the property free from the lien. That question arises from the following facts.

On March 26, 1947, the real estate involved was conveyed to J. E. Hutcherson and Lois G. Hutcherson, his wife, as tenants by the entirety. For the year 1947 Hutcherson and his wife filed separate income tax returns. On December 15, 1947, Hutcherson filed a suit for divorce against his wife. May 26, 1948, the United States filed in the office of the Recorder of Deeds for Jackson County, Missouri, (in which county the real estate was located) a No-

tice of Federal Tax Lien in the sum of $1,091.61 for unpaid 1947 income taxes assessed against Hutcherson individually. There was and is no claim made that the United States had any claim against Mrs. Hutcherson. On June 9, 1948, Hutcherson and his wife entered into a written pre-divorce property settlement agreement by which it was provided, among other things, that the real estate in question was to be conveyed by both Hutcherson and his wife to a third person. Although the written agreement does not expressly so provide, it is assumed that the understanding at the time was that the third person was to reconvey the property to Mrs. Hutcherson after the divorce so as to vest in her the entire interest in the real estate. Pursuant to that agreement, Hutcherson and his wife conveyed the property to Esther C. Moberly on June 9, 1948. There was and is no contention that the transfer of the title to Moberly and through her to Mrs. Hutcherson was without consideration for the purpose of defrauding the United States of the opportunity to collect its tax claim against Hutcherson or to defraud any creditor, or for any purpose other than to pass the entire title to Mrs. Hutcherson as a part of the divorce settlement. Therefore this case is not complicated by any issues of fraud or related questions. A divorce was granted Mrs. Hutcherson on her cross bill on June 30, 1948. July 2, 1948, Esther C. Moberly conveyed the property to Lois G. Hutcherson alone. On December 1, 1949, Lois G. Hutcherson sold and deeded it to Raymond W. Hutton and Mary S. Hutton, his wife. Thereafter, Lois G. Hutcherson, Raymond W. Hutton and Mary S. Hutton filed this action in the Jackson County Circuit Court against the United States to quiet the title to the real estate in question in Raymond W. Hutton and Mary S. Hutton, and specifically to obtain a judgment that the United States had no interest in the property as a result of the notice of the federal tax lien. The cause was properly removed to the United States District Court where it was tried and a judgment was entered quieting the title in the Huttons and decreeing that the Notice of Tax Lien was not a cloud upon the title. It is from that

judgment that this appeal was taken. The trial court's Memorandum Opinion is reported 92 F.Supp. 168.

Appellant contends the provision of Section 3670 of the Internal Revenue Code, 26 U.S.C.A. § 3670,[1] that the United States shall have a lien upon all property *and rights to property* belonging to the taxpayer, results in the attachment of the lien to the interest of Hutcherson in the real estate on the date the tax notice was filed. And that the lien having attached, his interest in the property could not thereafter be conveyed free of the lien.[2] The entire problem turns upon the question of whether the lien actually attached to the husband's interest. If it did, then his voluntary conveyance could not defeat the lien. State of Michigan v. United States, 317 U.S. 338, loc.cit. 340, 63 S.Ct. 302, 87 L.Ed. 312. But if the lien did not attach to the property interest, then it could not follow the title.

■ To determine whether the lien attached to the husband's interest in the property it is necessary to examine that interest and to ascertain whether it is such an interest to which any lien can attach. That ascertainment will be made by the application of the law of Missouri determining and defining the law of property rights in that state. Tyler v. United States, 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991; Warburton v. White, 176 U.S. 484, loc. cit. 496, 20 S.Ct. 404, 44 L.Ed. 555.

■ In the Warburton case the rule is stated, 176 U.S. loc. cit. 496, 20 S.Ct. 409: "* * where state decisions have interpreted state laws governing real property or controlling relations which are essentially of a domestic and state nature, in other words, where the state decisions establish a rule of property, this court when called upon to interpret the state law will, if it is possible to do so, in the discharge of its duty, adopt and follow the settled rule of construction affixed by the state court of last resort to the statutes of the state, and thus conform to the rule of property within the state."

And in the Tyler case it is reiterated in the following language, 281 U.S. loc. cit. 501, 50 S.Ct. 358, 74 L.Ed. 991. "The decisions of the courts of Maryland and Pennsylvania follow the common law, and are in accord in respect of the character and incidents of tenancy by the entirety. In legal contemplation, the tenants constitute a unit; neither can dispose of any part of the estate without the consent of the other; and the whole continues in the survivor. In Maryland, such a tenancy may exist in personal property as well as in real estate. These decisions establish a state rule of property, by which, of course, this court is bound. Warburton v. White, 176 U.S. 484, 496, 20 S.Ct. 404, 44 L.Ed. 555."

Counsel for the United States concede that property rights are to be determined in accordance with state law, but say that federal law, in this instance Section 3670 of the Internal Revenue Code, supra, "controls the application of the federal tax lien to whatever 'property' or 'rights to property' a taxpayer may have under state law." Citing State of Michigan v. United States, 317 U.S. 338, 63 S.Ct. 302, 87 L.Ed. 312; Glass City Bank v. United States, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56; and Detroit Bank v. United States, 317 U.S. 329, 63 S.Ct. 297, 87 L.Ed. 304. They further say that the federal statutes governing federal tax liens are controlling and override any conflicting provisions of state law and cite

---

1. "Subchapter B—Lien for Taxes

"§ 3670. Property subject to lien

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."
26 U.S.C.A. § 3670.

2. "§ 3671. Period of lien
"Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."
26 U.S.C.A. § 3671.

in support thereof State of Michigan v. United States, supra, United States v. Rosenfield, D.C.E.D.Mich., 26 F.Supp. 433, and In re Dartmont Coal Co., 4 Cir., 46 F.2d 455. Insofar as the foregoing authorities relate to the subject now under consideration, they deal with the question of whether federal estate taxes may be levied on the inheritance of one of the tenants by the entirety upon the death of the other tenant and the dissolution of the tenancy, and whether state statutes may be enacted overriding Acts of Congress fixing the time liens for federal taxes shall take effect, the nature of the lien, and the method for perfecting such liens. The answer to neither of these questions determines or affects the rule of property in Missouri defining, without discrimination between the state's interests and those of the United States, the nature of the estate by the entirety in Missouri. For present purposes it may be assumed that Section 3670, supra, requires the attachment of the federal tax lien to a "right to property" created by state law and that Section 3670 would override a state law (if any existed) providing that a federal tax lien should not apply to a specified "right to property" created by state law. But as indicated, neither of these assumptions aids in defining the interest which one of two tenants by the entirety has in Missouri and hence does not answer the question whether that interest is such an interest in real estate or such a "right to property" to which a lien may attach.

■ The estate by the entirety is of ancient origin. It comes from the common law and exists in Missouri by reason of its adoption by that state. It is built upon the fiction of the law that a husband and wife are one and only one legal entity. It is described in Wimbush v. Danford, 292 Mo. 588, 238 S.W. 460, loc.cit. 466, as follows:

"The character of estate known as an estate by the entirety has long been firmly intrenched in the law of this state. As early as Gibson v. Zimmerman, 12 Mo. 385, 51 Am.Dec. 168, and Garner v. Jones, 52 Mo. 68, the common-law doctrine that a conveyance in fee of real estate to a husband and wife created a tenancy by the entirety was accepted and adopted with judicial approval. In Hall v. Stephens, 65 Mo. 670, 27 Am.Rep. 302, Bains v. Bullock, 129 Mo. 117, 31 S.W. 342, and [First Nat.] Bank v. Fry, 168 Mo. 492, 68 S.W. 348, the estate was further recognized. With the adoption of the common-law doctrine, there was necessarily adopted the attributes of the estate, viz.: That neither the husband nor wife was seized of moieties but of entireties, each being the owner of the entire estate; that if either died the estate continued in the survivor; and that, upon the death of both, the heirs of the last surviving would take to the exclusion of the heirs of the first deceased. Tiedeman on Real Property (3d Ed.) § 181. In Wilson v. Frost, 186 Mo. [311] loc.cit. 319, 85 S.W. 377, 105 Am.St.Rep. 619, 2 Ann. Cas. 557, Judge Valliant, in speaking of this estate, said:

"'In an estate of the entirety, the husband and the wife during their joint lives each owns, not a part, or a separate or a separable interest, but the whole, and therefore the death of one leaves the other still holding the whole title as before, with no one to share it.'

"In Frost v. Frost, 200 Mo. [474] loc. cit. 481, 98 S.W. [527] 528, 118 Am.St.Rep. 689, it was said:

"'Neither the husband nor the wife in an estate of entirety can so destroy the character of the estate as to prevent the survivor becoming the sole owner.'

"And as recent as Ashbaugh v. Ashbaugh, 273 Mo. [353] loc.cit. 357, 201 S.W. [72] 73, this court has said:

"'An estate by the entirety is created by a conveyance to the husband and wife by a deed in the usual form. It is one estate vested in two individuals who are by a fiction of law treated as one person, each being vested with the entire estate. Neither can dispose of it or any part of it without the concurrence of the other, and in case of the death of either the other retains the estate.'"

■ The estate with its attributes has been retained in Missouri after the adoption of the Married Women's Act, R.S.1949, § 451.250–451.300. Otto F. Stifel's Union Brewing Co. v. Saxy, 273 Mo. 159, 201 S.

W. 67, L.R.A.1918C, 1009; Ashbaugh v. Ashbaugh, 273 Mo. 353, 201 S.W. 72; A. J. Meyer & Co. v. Schulte, Mo.App., 189 S. W.2d 183.

■ Instances of deviation from the pure fiction of one entity exist. Grose v. Holland, 357 Mo. 874, 211 S.W.2d 464; Morgan v. Finnegan, D.C., 182 F.2d 649. But there can be no question that in Missouri the estate has retained the characteristic of immunity of the interests of each spouse in the estate from attachment, levy, or the liens of the creditor of one only of the tenants, as an essential characteristic. After reviewing the authorities generally on the nature and characteristics of the estate, the Missouri Supreme Court said in Otto F. Stifel's Union Brewing Co. v. Saxy, supra: "* * * we conclude that where a judgment and execution thereon are against a husband alone, not including the wife, such judgment and execution cannot affect in any way property held by them by the entireties, nor can it affect any supposed separate interest of the husband therein, *for he has no separate interest.*" [273 Mo. 159, 201 S.W. 71.] (Italics ours.)

And in the Meyers case supra: "It is established law that neither husband nor wife acting alone has power to subject to a lien property held as an estate by the entirety." [189 S.W.2d 189.]

And in Blodgett v. United States, 8 Cir., 161 F.2d 47, loc.cit. 50, this court said: "There is no dispute that the title acquired from Adams vested an entirety in appellant and his wife and that the land so held was not an asset in this bankruptcy."

Citing Shipman v. Fitzpatrick, 350 Mo. 118, 164 S.W.2d 912; Baker v. Lamar, Mo.Sup., 140 S.W.2d 31; Dickey v. Thompson, 323 Mo. 107, 18 S.W.2d 388. The characteristic of immunity from the individual debt of either spouse must, under the Missouri law, exist or the estate is not one by the entirety. Destroy that attribute and the estate is effectively destroyed. It is as much an incident to the existence of the estate as the requirement that the estate may exist only in a husband and wife, that neither has, during its existence, any separable or distinguishable individual interest therein, and that it is dissolved by operation of law upon the dissolution of the marital status by death or divorce. It is true that the estate may be conveyed by the joint act of the husband and wife during coverture, but that does not destroy or qualify the other characteristics. The basis for such immunity lies in the long established rule in Missouri that neither spouse individually has such an interest in an estate by the entirety as will permit the adherence thereto of the claims or liens of the creditor of only one spouse. Otto F. Stifel's Union Brewing Co. v. Saxy, supra; Ashbaugh v. Ashbaugh, supra; A. J. Meyer Co. v. Schulte, supra.

■ We are invited to depart from this rule of property in Missouri because the existence of the rule and its application to tax liens may make the collection of delinquent tax claims more difficult. We do not conceive it to be an appropriate exercise of the power and authority of a federal court to strike down a rule of property, not repugnant to any law of the United States, long established in the state, and upon which many valuable property rights are based.

Local laws establishing a community interest in both the husband and wife of the income of either have given rise to situations analogous to this. In those states having community property laws under which the husband and wife each had an equal interest in the income of either, the federal tax authorities undertook, for the determination of the amount of income taxes due, to assess all of the income earned by the husband or wife to him or her alone, regardless of the local statute. But the Supreme Court recognized the right of the states to establish such rules of property and refused to override the law of the states having community property laws, although their recognition and enforcement resulted in disparity and inequality of treatment by the federal tax authorities of taxpayers in different states. Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239; Commissioner of Internal Revenue v. Harmon, 323 U.S. 44, 65 S.Ct. 103, 89 L.Ed. 60.

When the community property law of California gave to the wife only an expectancy in the community income of the husband and wife, the Supreme Court said, United States v. Robbins, 269 U.S. 315, loc. cit. 326, 46 S.Ct. 148, 149, 70 L.Ed. 285: "If on the whole this notion seems to us to be adopted by the California courts it is our duty to follow it, so far as material, even if contrary expressions should be found here or there in the books; and it is no concern of ours whether the prevailing decision is a legitimate descendant from its parent the Spanish law or otherwise."

But later when the California law had been changed by the legislature, giving to the wife a present vested interest in the community income, the Supreme Court followed the law of California as changed. United States v. Malcolm, 282 U.S. 792, 51 S.Ct. 184, 75 L.Ed. 714; Commissioner of Internal Revenue v. Harmon, supra. There could hardly be a clearer demonstration of the policy of the federal courts to follow the rules of property of the states.

█ Under Missouri law the individual interest of the husband or wife in an estate by the entirety is, like the rainbow in the sky or the morning fog rising from the valley, not such an estate as may be subjected to the grasp of an attaching creditor or which will permit the adherence thereto of a tax lien. We are not at liberty to change the nature of either. The definition of the nature of the Missouri estate by the Missouri courts has become the "inveterate policy" of the state. Commissioner of Internal Revenue v. Harmon, supra. It is applied by the state courts in determining whether liens arising under state law may attach to the individual interest of either spouse. Uniformly it is held that such liens may not. Not because State or Federal liens are withheld from this particular "right to property", but because the interest of one spouse in the estate by the entirety in Missouri is not a right to property or property in any sense. We may not change the nature of the estate or the interest of one spouse therein for purposes of federal taxation.

It is argued that the United States only sought to hold a lien against the husband's

possible future interest and that the trial court had no right to defeat that right. The answer is that the husband had no separate interest to which the lien could attach prior to the divorce and before the latter event all possibility of the husband attaining any interest in the property to which a lien could attach was extinguished by the valid transfer of the title to Esther C. Moberly, and since no lien for the tax claim attached to Hutcherson's interest in the estate prior to its conveyance to Esther C. Moberly, the conveyance to her was free of the tax lien.

The judgment of the trial court was correct and is affirmed.