Jim K. TALBOT and Tara Lee Talbot, Norwest Mortgage, Inc., and First American Title Insurance Company, Plaintiffs,

v.

UNITED STATES of America, Acting By and Through Its Secretary of The Treasury and Its Internal Revenue Service, Defendant.

No. 93–CV–1035–B.

United States District Court,
D. Wyoming.

May 3, 1994.

Richard L. Williams, Barry G. Williams, Casper, WY, for plaintiffs.

Susan Laughlin, U.S. Dept. of Justice, Washington, DC, Donald R. Wrobetz, Asst. U.S. Atty., Cheyenne, WY, for defendant.

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

The above-entitled matter having come before the Court upon parties' cross-motions for summary judgment, and the Court having reviewed the materials on file herein, having heard argument from the parties, and being fully advised in the premises, FINDS and ORDERS as follows:

### Background

The plaintiffs and the defendant have filed a stipulation of uncontroverted facts which discloses the following sequence of events upon which the controversy between the parties is based.

On May 20, 1985, Gerald and Michelle Dikes purchased a residential property in Evanston, Wyoming, as tenants by the entireties. On June 21, 1985, the Dikes' executed a real estate mortgage, secured by the property in question, to Rocky Mountain Federal Savings & Loan Association. The mortgage and the warranty deed were recorded in the Uinta County Clerk's office on June 24, 1985.

On March 11, 1985, defendant Internal Revenue Service ("IRS") made two assessments against Mr. Dikes for certain tax liabilities arising under 26 U.S.C. § 6672(a). On July 11, 1986, a Notice of Federal Tax Lien was filed in the Uinta County Clerk's office reflecting a lien on the property which the IRS claimed by virtue of those assessments.

On May 4, 1989, Rocky Mountain Federal Savings Bank, as successor in interest to Rocky Mountain Federal Savings & Loan Association, issued to Mr. and Mrs. Dikes a notice of intent to foreclose their mortgage by advertisement and sale. This notice of intent was published in Uinta County on May 24 & 31 and on June 7 & 14. On June 21, 1989, the Sheriff of Uinta County held a foreclosure sale involving the Dikes' property. The purchaser at the sale was the mortgagee, Rocky Mountain Federal Savings Bank. No notice of the foreclosure sale was mailed to or served upon the IRS.

At the expiration of the statutory redemption period, the Sheriff executed a Sheriff's Deed to the property to the bank. The bank recorded this deed on November 9, 1989. On October 25, 1989, the bank conveyed the property to HUD. The HUD deed was also recorded on November 9, 1989. A number of conveyances followed. HUD conveyed the property by special warranty deed on April 10, 1992, to Barbara J. Slavens and her deed was recorded on April 11, 1992. Ms. Slavens then conveyed the property by warranty deed dated May 5, 1992, to Sharon Batwin. That deed was recorded on May 6, 1992. Sharon Batwin conveyed the property by warranty deed dated August 31, 1993, to the plaintiffs in this case, Jim and Tara Talbot. On September 1, 1993, plaintiff Norwest Mortgage, Inc. recorded a mortgage on the property, executed by the Talbots. Plaintiff First American Title Insurance Company has issued title insurance on the property with respect to the various conveyances.

The central issue to be determined by the Court is whether the Federal tax liens assessed against Mr. Dikes and recorded in the Uinta County Clerk's office, attached to the property owned by Mr. and Mrs. Dikes as tenants by the entireties. The plaintiffs argue, in essence, that the lien did not attach to the property. The IRS contends that the lien did attach and was not extinguished by the foreclosure sale because no notice was provided to the IRS of that sale.

### Standard of Review

"By its very terms, [the Rule 56(c) ] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

The trial court decides which facts are material as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2510; *see also Carey v. United States Postal Service,* 812 F.2d 621, 623 (10th Cir.1987). Summary judgment may be entered "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Carey,* 812 F.2d at 623. The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Carey,* 812 F.2d at 623. In considering a party's motion for summary judgment, the court must examine all evidence in the light most favorable to the nonmoving party. *Barber v. General Elec. Co.,* 648 F.2d 1272, 1276 n. 1 (10th Cir.1981).

In this case there are no factual disputes and the parties agree that the matter can be resolved on the cross-motions for summary judgment which are currently before the Court.

### Discussion

#### A. The Federal Statutory Scheme

The IRS claims an interest in the plaintiffs' property by virtue of the federal tax liens against the property which were recorded in the Uinta County Clerk's office at the time Gerald and Michelle Dikes owned the property as tenants by the entireties. The section of the Internal Revenue Code which allows the creation of federal tax liens states that:

[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon *all property and rights to property, whether real or personal, belonging to such person.*"

26 U.S.C. § 6321 (emphasis added). The Supreme Court has held that "[t]he statutory language 'all property rights and rights to property,' ... is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. National Bank of Commerce,* 472 U.S. 713, 719–20, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985).

■ Once the IRS has a lien on a person's property, the IRS must be notified of any sale or nonjudicial foreclosure on the property in order to extinguish the lien. The Internal Revenue Code provides that if notice is not provided to the IRS, the sale is made subject to the lien. Section 7425(b) provides, in pertinent part, as follows:

a sale of property on which the United States has or claims a lien, ... shall, except as otherwise provided, be made subject to and without disturbing such lien or title, if notice of such lien was filed or such title recorded ... more than 30 days before such sale and the United States is not given notice of such sale....

26 U.S.C. § 7425(b).

The plaintiffs contend that the federal tax lien never attached to the property and as a result, no notice was required under § 7425 to extinguish the lien against the property. Thus, the first question that the Court must address is whether the property owned by Gerald and Michelle Dikes by tenants by the entirety was property belonging to Gerald Dikes to which a federal tax lien could attach.

■ It is a well-established rule that state law controls whether and to what extent a taxpayer has property or rights to property to which a federal tax lien can attach. The Supreme Court stated in *Morgan v. Commissioner,* 309 U.S. 78, 82, 60 S.Ct. 424, 426,

84 L.Ed. 585 (1940), that "in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property ... sought to be reached by the statute." In *Aquilino v. United States,* 363 U.S. 509, 514, 80 S.Ct. 1277, 1281, 4 L.Ed.2d 1365 (1960), the Court explained that "once the tax lien has attached to the taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's 'property' or 'rights to property.'" Therefore, the Court now turns to Wyoming law regarding tenancies by the entirety to determine whether Mr. Dikes had a property interest to which the federal tax lien could attach.

## B. Tenancies by the Entirety

The plaintiffs argue that the Wyoming law defining tenancies by the entirety is well-established and indicates that neither the husband nor the wife has a separate interest in the property which is capable of alienation. The IRS, on the other hand, takes the position that the Wyoming law on tenancies by the entirety concerns the indivisibility and inalienability of the estate without mutual consent of the spouses, not whether each spouse has an independent interest in the property.

In 1936, the Wyoming Supreme Court defined the tenancy by the entireties estate as follows:

"A conveyance or devise to two persons, who are husband and wife at the time property vests in them," says 2 Thompson on Real Property, 939, § 1735, "creates an estate by the entireties. By reason of their unity by marriage, they together take the whole estate as one person. Neither has a separate estate or interest in the land but each has the whole estate. Upon the death of one, the entire estate and the interest belongs to the other, not by virtue of survivorship, but by virtue of the title that vested under the original limitation."

*Peters v. Dona,* 49 Wyo. 306, 54 P.2d 817, 819–20 (1936). The court in *Peters,* placing heavy reliance upon the decisions of the Missouri courts, further described the nature of

the husband and wife's interests in the estate:

> Both husband and wife are seized of the entirety; neither can sever the union of interest without the concurrence of the other; each and both own the whole estate during their lives, and upon the death of either the survivor continues to own the whole estate, each is seized of an individual entirety, so neither has a separate interest therein that can be aliened.

*Id.* 54 P.2d at 825 (citing *Lomax v. Cramer,* 202 Mo.App. 365, 216 S.W. 575 (1919); *Ashbaugh v. Ashbaugh,* 273 Mo. 353, 201 S.W. 72 (1918); *Otto F. Stifel's Union Brewing Co. v. Saxy,* 273 Mo. 159, 201 S.W. 67 (1918)).

In *Peters,* Mr. and Mrs. Peters owned the property in question as tenants in the entirety. The Wyoming Supreme Court addressed the question of whether Mr. Peters had an interest in the property which could be subjected to a mechanic's lien. The court concluded that the husband's "interest alone in an estate by entirety could not be made subject to the lien.... To do so would be to take his wife's property without her being brought into the litigation, as the law requires." *Id.* 54 P.2d at 826.

Most recently, the Wyoming Supreme Court held that a husband alone could not subject property he held with his wife as a tenancy by the entireties to a mortgage. *Colorado National Bank v. Miles,* 711 P.2d 390, 393 (Wyo.1985). In that case, the court stated that property held as a tenancy by the entireties " 'is not subject to execution or other creditor's process for the separate debts of one of the spouses.' " (citing E. George Rudolph, The Wyoming Law of Real Mortgages, at 9 (Wyoming Law Institute 1969)).

The IRS argues that because the Wyoming Supreme Court has failed to recite the absence of any property right in either spouse, it follows that each spouse has an independent and separate interest in the property to which a tax lien could attach. The IRS cites *Ward Terry & Co. v. Hensen,* 75 Wyo. 444, 297 P.2d 213 (1956), in which the Wyoming Supreme Court was faced with the question of whether the possessions, rents, income and profits from real property held by Mr.

and Mrs. Hensen as tenants by the entirety could be subjected to a judgment against Mr. Hensen during Mrs. Hensen's lifetime. The court held that "[i]n the absence of an agreement to the contrary the income, rents and profits of an estate by the entirety are an integral, indivisible part thereof." *Id.* 297 P.2d at 219–20.

In so holding, the court rejected the common law rule under which the husband had full control of the estate during the lifetime of the wife and was entitled to its usufruct, stating:

> The wife has been given the right to control her own property. Her disability to do so has been swept aside. *She has an interest in property held by her and her husband by the entirety,* and to say that she has no part in the control of the latter would be rather anomalous and contrary to the spirit if not the letter of our constitutional and statutory provisions....

*Id.* 297 P.2d at 216 (emphasis added). The IRS claims that this language indicates that the court recognized the independent property right of each spouse in an estate held by the entirety.

This Court is not persuaded. In making this tenuous argument, the IRS ignores the longstanding rule in Wyoming that in an estate by the entireties, the husband and wife together take the whole estate as one person, and *"[n]either has a separate estate or interest in the land,* but each has the whole estate." *Peters,* 54 P.2d at 819–20 (emphasis added).

Moreover, the IRS itself has taken the position that a federal tax lien could not attach to property which was held by taxpayers as tenants by the entireties. *See, e.g., United States v. Schneider,* 926 F.2d 777, 779 (8th Cir.1991); *Herndon v. United States,* 501 F.2d 1219, 1220 (8th Cir.1974). In a widely circulated letter decision the IRS, through the office of the Wyoming District Director, addressed a fact scenario similar to the case at bar. The letter stated:

> In reviewing your request, I find that Larry E. Wortman and Tammy M. Wortman, husband and wife[,] were buyers of the subject property under an Agreement for

Warranty Deed. Under current Wyoming Law the purchase is considered under the guise of Tenancy by Entirety, where each tenant owns a 100% indivisible interest. The Federal Tax Lien filed on October 11, 1985, ... is in the name of Larry E. Wortman, ... as an individual. As such, ... the Federal Tax Lien does not attach to the subject property.

Thus, it appears that even the IRS has acknowledged well-established Wyoming law which indicates that there is no individual interest in a tenancy by the entirety to which a federal tax lien can attach.

In addition, the Court notes that the United States Supreme Court has not decided the issue of whether a federal tax lien based upon the failure of one spouse to pay taxes attaches to property held by both spouses as tenants by the entireties. It has, however, discussed the decisions of lower federal courts on this issue. In *United States v. Rodgers*, 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983), the court addressed the question of whether a tax lien attached to a homestead right created under Texas law. Justice Blackmun, with whom Justices Rehnquist, Stevens and O'Connor joined, concurring in part and dissenting in part, analogized the homestead interest to a tenancy by the entireties. He wrote:

In fact, in 1954 the Senate foiled an attempt by the House to extend the reach of federal tax liens to tenancies by the entirety, a spousal property interest similar to the Texas homestead. The rule pronounced in the courts, e.g., *United States v. Hutcherson*, 188 F.2d 326, 331 (8th Cir. 1951); *United States v. Nathanson*, 60 F.Supp. 193, 194 (E.D.Mich.1945), and the view of commentators, e.g., Anderson, [Federal Tax Liens—Their Nature and Priority, 41 Calif.L.Rev. 241, 254 (1953)]; Clark, [Federal Tax Liens and Their Enforcement, 33 Va.L.Rev. 13, 17 (1947)] was that tenancies by the entirety, like Texas homesteads, *could not be sold* to enforce the tax liability of one spouse. The House passed an amendment that would have extended the tax lien created by § 6321 expressly to the taxpayer's interest as tenant by the entirety. HR 8300, 83d Cong., 2d

Sess., § 6321 (1954) (Code bill). The Senate removed the language, stating: "The deletion of the phrase is intended to continue the existing law." S.Rep. No. 1622, 83d Cong., 2d Sess., 575 (1954).

*Rodgers*, 461 U.S. at 719–20, 103 S.Ct. at 2156 (Blackmun, J. dissenting).

The majority distinguished the homestead estate from a tenancy by the entireties but, in doing so recognized that:

[t]he basic holding of the line of cases mentioned by the dissent was, not merely that interests in a tenancy by the entirety could not be sold to satisfy a tax debt of one spouse, but that, as a result of the peculiar legal fiction governing tenancies by the entirety in some States, no tax lien could attach in the first place because neither spouse possessed an independent interest in the property. See, e.g., *United States v. American National Bank of Jacksonville*, 255 F.2d 504, 506 (5th Cir. 1958); *United States v. Hutcherson*, 188 F.2d 326, 331 (8th Cir.1951).

*Id.* at 702, n. 31, 103 S.Ct. at 2147, n. 3.

The Wyoming Supreme Court's reliance upon Missouri law in *Peters*, 54 P.2d at 821, 824, and 825, is especially relevant in light of Eighth Circuit precedent, mentioned by the Supreme Court in *Rodgers*, which interprets Missouri law regarding tenancies by the entirety. In *United States v. Hutcherson*, 188 F.2d 326 (8th Cir.1951), the Eighth Circuit Court of Appeals was faced with the question of whether a tax lien could attach against the interest of only one spouse in property owned as tenant by the entirety. In examining Missouri law to determine whether a lien could attach to the interest, the court held that:

Under Missouri law the individual interest of the husband or wife in an estate by the entirety is, like the rainbow in the sky or the morning fog rising from the valley, not such an estate as may be subjected to the grasp of an attaching creditor or which will permit the adherence thereto of a tax lien. We are not at liberty to change the nature of either. The definition of the nature of the Missouri estate by the Missouri courts has become the "inveterate policy" of the state.... It is applied by the state courts

in determining whether liens arising under state law may attach to the individual interest of either spouse. Uniformly it is held that such liens may not. Not because State or Federal liens are withheld from this particular "right to property," but because the interest of one spouse in the estate by the entirety in Missouri is not a right to property or property in any sense. We may not change the nature of the estate or the interest of one spouse therein for purposes of federal taxation.

*Id.* at 331 (citations omitted). *See also Schneider,* 926 F.2d at 779 (stating that "the federal income tax obligations of one spouse cannot be collected from Missouri property held by the entireties, and ... one spouse has no separate interest in such property"); *Herndon,* 501 F.2d at 1220.

The Wyoming definition of property held by tenants by the entireties is identical to the definition of that property interest in Missouri. Missouri law defines a tenancy by the entireties as follows:

> In an estate of the entirety, the husband and the wife during their joint lives each owns, not a part, or a separate or a separable interest, but the whole, and therefore the death of one leaves the other still holding the whole title as before, with no one to share it.

*Hutcherson,* 188 F.2d at 329 (citing *Wilson v. Frost,* 85 S.W.2d 377, (Mo.1935)). As noted above, the Wyoming Supreme Court in *Peters* relied heavily upon Missouri law to define the tenancy by the entireties as an estate where spouses "take the whole estate as one person," and where neither "has a separate estate or interest in the land, but each has the whole estate." *Peters,* 54 P.2d at 820.

■ Accordingly, this Court holds that under Wyoming law defining the tenancy by the entireties, neither spouse possesses an independent interest in the property. As a result, neither spouse has an interest to which a federal tax lien could attach. Thus, the federal tax lien filed by the IRS against Gerald Dikes never attached to the property owned by Gerald and Michelle Dikes as tenants by the entireties.

## C. The Right of Redemption

■ The IRS argues, in the alternative, that even if Gerald Dikes had no independent interest in the property, upon foreclosure, the tax lien attached to his right of redemption. This argument, too, is untenable because any right of redemption was also owned by the Dikes as tenants by the entirety.

Under Wyoming law, "it is lawful for any person ... whose real property has been sold by virtue of ... foreclosure by advertisement and sale ... to redeem the real estate...." Wyo.Stat. § 1–18–103. In the case at bar, the "person ... whose real property" was sold is Gerald and Michelle Dikes, as tenants by the entirety. Thus, the right to redeem is in Gerald and Michelle Dikes, as tenants by the entirety. As explained above, Gerald Dikes, therefore, had no separate and distinct interest in the right to redeem to which any federal tax lien could attach.

## D. The Appropriate Remedy

The plaintiffs in this case seek a declaratory judgment and injunctive relief. The defendant, however, takes the position that 28 U.S.C. § 2201 contains an exception which prevents federal courts from granting declaratory relief to a taxpayer concerning the assessment and collection of taxes against him. The defendant also argues that injunctive relief is unavailable. The Court addresses each argument below.

## 1. The Availability of Declaratory Relief

■ There is no dispute that a federal district court is prevented from granting declaratory relief to a taxpayer concerning the assessment and collection of taxes against that taxpayer. 28 U.S.C. § 2201. In this action, however, the plaintiffs, not the taxpayer, seek a declaratory judgment concerning the interest claimed by the United States in property owned by the plaintiffs Talbot, mortgaged to plaintiff Norwest Mortgage, Inc., and insured by plaintiff First American Title Insurance Company.

An action brought by a plaintiff other than the taxpayer, which seeks to obtain declaratory relief regarding interests in real proper-

ty in which the IRS claims an interest is not prohibited by § 2201. *See Bullock v. Latham*, 306 F.2d 45 (2nd Cir.1962); *Tomlinson v. Smith*, 128 F.2d 808 (7th Cir.1942); *Ingham v. Hubbell*, 462 F.Supp. 59 (S.D.Iowa 1978); *Henshel v. Guilden*, 300 F.Supp. 470 (S.D.N.Y.1969); *Sonits v. United States*, 221 F.Supp. 762 (D.C.N.J.1963); *Pettengill v. United States*, 205 F.Supp. 10 (D.C.Vt.1962); *Guttman v. United States*, 196 F.Supp. 384 (E.D.N.Y.1961). These cases illustrate the general rule that declaratory relief is available where the plaintiff maintains that his property is being taken to satisfy the tax liability of another. Indeed, the court in *Bullock* stated that the § 2201 exception "sufficiently serves its purpose if limited to controversies involving tax liabilities of parties *qua* taxpayers and if not construed as foreclosing declaratory judgment relief to persons claiming an interest in property levied upon to satisfy the tax obligations of another." *Bullock*, 306 F.2d at 48.

Thus, in the case at bar, where the IRS has threatened to levy on the property in which the plaintiffs claim an interest, in order to satisfy the tax liability of Gerald Dikes, declaratory judgment is available to the plaintiffs.

**2. The Availability of Injunctive Relief**

The plaintiffs also seek injunctive relief pursuant to 26 U.S.C. § 7426. Section 7426(b)(1) states as follows:

> If a levy or sale would irreparably injure rights in property which the court determines to be superior to rights of the United States in such property, the court may grant an injunction to prohibit the enforcement of such levy or to prohibit such sale.

As the court in *Rosenblum v. United States*, 549 F.2d 1140, 1145 (8th Cir.1977), explained, "the statute appears to be in effect a codification of the decisional rule laid down in earlier cases that a suit to enjoin a wrongful taking of the property of one person to satisfy another's tax obligations was not barred by the anti-injunction statute itself."

This Court holds that injunctive relief is available to the plaintiffs under § 7426(b)(1) because, as discussed above, the United States has no interest in the property in question and any levy or sale of the property on the part of the United States would irreparably injure the plaintiffs.

In sum, because Wyoming law provides that when property is held by husband and wife as tenants by the entirety, neither has a separate interest in the property, Mr. Dikes did not have a separate interest to which the IRS's tax lien could attach. The IRS, therefore, was not entitled to notice of the foreclosure sale of the property as required under 26 U.S.C. § 7425(c) and can claim no interest in the property now.

**THEREFORE, IT IS**

ORDERED that plaintiffs' Motion for Summary Judgment be, and the same hereby is, GRANTED. It is further

ORDERED that defendant's Motion for Summary Judgment be, and the same hereby is, DENIED. It is further

ORDERED that plaintiffs are entitled to an order quieting title against the United States. It is further

ORDERED that plaintiffs are entitled to a declaration that the United States has no right or interest in the property at issue in this case by virtue of its Notice of Federal Tax Lien. It is further

ORDERED that the defendant United States shall be enjoined from taking any action with respect to the property in aid of collection of its tax assessment of Mr. Gerald Dikes.